J^DUFRESNE, Chief Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Issac Newman, with possession of cocaine, in violation of LSA-R.S. 40:967 C. Defendant pled not guilty and subsequently filed a motion to suppress evidence *297 which, after a hearing, was denied by the trial judge.
Following the denial of this motion, defendant withdrew his former plea of not guilty, and after being fully advised of his rights, he pled guilty as charged. Defendant entered his plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to appeal the ruling on the motion to suppress.
In accordance with the plea agreement, the trial judge sentenced defendant to four years of imprisonment at hard labor, with credit for time served. Defendant now appeals, challenging the trial court’s denial of his motion to suppress.

J¡FACTS

In April of 2001, Jefferson Parish Sheriff Officers Anthony Synigal and Jeff Heggelund drove to an apartment complex on Hessmer Avenue in Metairie to serve an arrest warrant on a female subject for using fraudulent prescriptions. As the officers ascended the stairs inside the complex, they observed two male subjects, later identified as Issac Newman and Maurice Johnson, and the two men were engaged in a conversation. At the time, it was a warm day and Newman and Johnson were wearing hooded sweatshirts. Officer Synigal observed tobacco remnants at the men’s feet. As the officers approached Newman and Johnson, one of the men was heard by Officer Sy-nigal to say, “Let’s go.” The policemen walked past Newman and Johnson and Officer Synigal said, “Hello.” Shortly thereafter, Newman and Johnson left the scene.
Officers Synigal and Heggelund attempted to serve the arrest warrant on the female subject, but she was not there. The policemen left the apartment complex and returned to their police unit. Within approximately three to four minutes thereafter, while driving down Hessmer Avenue, the officers again saw Newman and Johnson. Newman and Johnson were walking together just blocks away from the apartment complex where they were first encountered. Upon seeing the men, Officer Synigal, who was in full uniform, exited his police unit in order to question them. Officer Synigal had been suspicious because the men were dressed in hooded sweatshirts on a warm day, had tobacco at their feet when first observed, and left the area immediately upon encountering the police at the apartment complex. Newman and Johnson, upon seeing the police the second time, fled in different directions. Officer Synigal pursued laNewman and yelled “Police!” to identify himself. Newman continued to run from Officer Synigal, and, as Officer Synigal caught up with Newman, the policeman grabbed the subject by his shirt. Newman sought to escape and, in the process, he struck the officer. Officer Synigal was able to handcuff Newman’s right wrist. During the struggle, Newman spit out a plastic packet containing an off-white rock, which later field-tested positive for cocaine. During the encounter, Officer Syni-gal saw Newman with his left hand inside his waistband. Fearing that Newman had a weapon, Officer Synigal drew his weapon. It was at that time that Newman got up and ran away from the officer. Officer Synigal gave chase, but was unable to apprehend Newman.
Thereafter, Officer Heggelund prepared a photographic lineup, and Officer Synigal was able to identify Newman from the lineup. Newman was subsequently arrested and charged with possession of cocaine.

DENIAL OF MOTION TO SUPPRESS

On appeal, defendant contends that the trial court erred in refusing to suppress *298 the evidence. He alleges that the cocaine was seized pursuant to an illegal stop.
The Fourth Amendment of the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is recognized by LSA-C.Cr.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2168, 80 L.Ed.2d 543 (1984). Reasonable suspicion to stop is something less than the probable cause required for an arrest. The reviewing court must look to the circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights, giving deference to the inferences and deductions of a trained officer. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049; State v. Manson, 791 So.2d at 755-756. The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton, supra. In evaluating the totality of the evidence, evasive actions in response to police conduct is a factor which may be weighed by the court. State v. Huntley, 708 So.2d at 1050.
The question of whether a particular search or seizure was lawful is for the trier of fact. A trial judge’s determination of admissibility is given great weight and will not be disturbed unless a preponderance of the evidence clearly so mandates. State v. Manson, 791 So.2d at 755.
In the present ease, after listening to the testimony presented at the suppression hearing, as set forth in the statement of the facts, the trial judge denied the motion to suppress stating as follows:
Okay. I’m going to deny the Motion to Suppress. I believe that the tobacco, the hooded sweatshirt, the “Let’s go,” the running, all amounts to the reasonable suspicion that’s needed. The striking occurred.' Then I think, as the State says, it is fair game. So, I’m going to deny the Motion to Suppress the Evidence—
Defendant now challenges that denial, asserting that the investigatory stop was illegal. In this regard he reasons that, at the time of the attempted stop, he was not engaged in suspicious behavior in that he was merely walking down the street with Johnson. Moreover, Newman argues that the prior encounter with Officer Synigal did not give rise to | .^suspicion justifying the stop because, although Syni-gal testified that cigars are often hollowed out to smoke marijuana, Synigal admitted that he did not see a cigar, nor did he see any hand-to-hand transfer.
The state contends that reasonable suspicion existed for the stop. Additionally, the state argues that, under the facts of this case, reasonable suspicion developed into probable cause for defendant’s arrest and the seizure of the evidence.
In this case, we find no error in the trial court’s denial of the motion to suppress. Officer Synigal indicated that he initially became suspicious of Newman and Johnson because they were wearing hooded sweatshirts on a warm day, and because they had tobacco remnants at their feet and often individuals who smoke marijuana do so by stuffing the drug into a carved-out cigar. Additionally, Officer Synigal heard one of the men say “Let’s go” upon seeing the police. Shortly after observing these factors, within a matter of three to four minutes and within a couple of blocks *299 of the first encounter, the officers again saw Newman and Johnson and attempted to stop them for questioning.
At the time of the second encounter, Newman and Johnson were seen walking down Hessmer Street in Metairie. Officer Synigal testified that he and his partner got out of the police unit “to conduct an investigatory stop, and both [i.e., Newman and Johnson] fled in opposite directions.” Thereafter, Officer Synigal yelled “Police!” The suspects continued running, and Officer Synigal gave chase after Newman. Officer Synigal grabbed Newman’s shirt, stopping him, and a struggle ensued. Newman tried to escape and, in the process, struck the officer. Officer LSynigal was able to handcuff Newman’s right wrist. During the struggle, Newman spit out a plastic packet containing cocaine.
Considering the defendant’s dress, the tobacco at his feet which, in the mind of a trained narcotics officer could have indicated the intent to commit a crime (i.e., the preparation to smoke marijuana) and the evasive actions of Newman and Johnson upon encountering the police, we conclude that reasonable suspicion to justify an investigatory stop existed in this case.
The recent case of State v. McDaniels, 01-K-305 (La.12/07/01), 803 So.2d 966, a per curiam opinion by the Louisiana Supreme Court, supports our conclusion. In McDaniels, the supreme court reinstated the trial court’s decision denying the motion to suppress. In McDaniels, the police stopped the defendant, a resident of the housing project, to ask for identification and the defendant fled. Upon his apprehension, the defendant spit out three bags of marijuana. In reaching its decision in McDaniels, the court reasoned, in pertinent part, as follows:
When defendant reacted to the request for identification by attempting to flee, the officers acquired reasonable suspicion justifying an investigatory stop. The ensuing recovery of three bags of marijuana which defendant abandoned by spitting them from his mouth after one of the officer’s grabbed his arm then provided probable cause for the subsequent arrest.
Likewise, in this case the defendant reacted to the officer’s attempt at requesting information by attempting to flee. Under McDaniels, this reaction by the defendant would have given the officer reasonable suspicion justifying an investigatory stop. When Officer Synigal grabbed the defendant, defendant spit out cocaine from his mouth. As in McDaniels, this would have provided Officer Synigal with probable cause |7for Newman’s arrest. Based on these reasons, we find no error in the trial court’s denial of the motion to suppress.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1976); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The record reflects that the trial judge failed to accurately advise defendant of the prescriptive period for post conviction relief as required by LSA-C.Cr.P. art. 930.8(C). While the trial judge told defendant at sentencing that he had “two years from today’s date to seek post-conviction relief,” according to the above article, the prescriptive period commences when the judgment of conviction and sentence has become final. Accordingly, the trial judge is instructed to inform defendant of the correct provisions of this article by sending appropriate written notice to him within ten days of this opinion and to file written proof in the record that defendant received such notice. State v. Williams, 98-651 (La.App. 5 Cir. 2/10/99), 729 So.2d 14.
*300 For the reasons set forth herein, defendant’s conviction and sentence are hereby affirmed. The case is remanded to the trial court for further action in accordance with this opinion.

AFFIRMED, REMANDED FOR FURTHER ACTION.