BROWN, Chief Judge.
 

 11 Defendant, Thomas G. Rios, was charged by bill of information with unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4. A jury found defendant guilty as charged. After being adjudicated a second felony offender, defendant was sentenced to serve 20 years at hard labor. Defendant has appealed his conviction and sentence. For the reasons set forth below, we affirm both the conviction and sentence.
 

 Discussion
 

 Sufficiency of Evidence
 

 Both appellate counsel and defendant in a
 
 pro se
 
 supplemental brief argue that the evidence presented was insufficient to prove guilt beyond a reasonable doubt.
 

 Lloyd Nelson, the new car sales manager of Red River Chevrolet, testified that on May 16, 2006, defendant entered the dealership. Nelson had a discussion with defendant, who then left. Nelson never saw defendant again; however, a few minutes later, Theron Colston, a porter for the dealership, came into the showroom. Nelson testified that he thought Colston looked “excited” and “stirred up.” When he asked Colston what happened, Colston replied, “Lloyd, that Mexican dude that was just in the showroom jumped in a truck and took off.” Nelson testified that he assumed that defendant was the “Mexican dude.” Nelson positively identified defendant as the man he saw and spoke with inside the dealership.
 

 Nelson testified that the truck that had been taken was a 2006 silver crew cab Z-71 Silverado that had been placed in the “make-ready” area to be detailed for a purchaser. Normally when vehicles were taken to the |2“make-ready” area, the keys were removed and placed in either a lock box or a locked closet for safekeeping. At the time the truck was stolen, it had no license plate on it, only the Red River Chevrolet advertisement tag. The vehicle was equipped with OnStar. Nelson reported the taking to police, and an alert was issued.
 

 Red River Chevrolet is located on the Bossier City side of the Red River just off
 
 *834
 
 1-20. Lieutenant David Searcy of the Greenwood Police Department learned that the truck was being tracked via OnS-tar and was westbound on 1-20. Lt. Searcy entered 1-20 westbound directly behind the truck. He initiated his lights and siren and stopped the truck. When his backup, Officer Stacy Porch, arrived, Lt. Searcy cuffed defendant and read him his
 
 Miranda
 
 rights. After defendant was read his rights and placed in Lt. Searcy’s vehicle, the officer asked defendant where he got the vehicle. “He said he had borrowed it from a friend. [Searcy] asked him what was the friend’s name, and after that he didn’t say anything ... The only statement he really made, he asked about the food in the jail and, you know, things of that nature, but nothing else about the vehicle or anything like that.”
 

 Officer Porch ran the license plate on the vehicle through the computer system in her car and found that the plate belonged to a vehicle registered to Ricky Bridges, who was the Assistant Chief of Police for the Town of Haughton. Chief Bridges was contacted and informed the officers that the license plate belonged to his Chevrolet Tahoe.
 

 According to defendant, the state failed to meet its burden of proving that defendant knew he was driving a stolen vehicle. Defendant concedes 1 ;ithat the state proved that the vehicle was stolen and that defendant was driving it, but that the state failed to disprove defendant’s statement to Officer Searcy that he got it from a friend.
 

 The decision of the U.S. Supreme Court in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), expanded appellate review of facts in state court criminal cases. The
 
 Jackson
 
 decision did away with Louisiana’s “no evidence” standard because it did not adequately protect due process guarantees. The
 
 Jackson
 
 court held that the proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.
 
 Jackson v. Virginia,
 
 443 U.S. at 324, 99 S.Ct. at 2792-93. Having been fully implemented by the Louisiana Supreme Court and legislatively enacted in La. C. Cr. P. art. 821, the
 
 Jackson
 
 reasonable doubt standard is now the only standard of review of facts for Louisiana appellate courts.
 
 State v. Brown,
 
 43,916 (La.App. 2d Cir.02/25/08), 4 So.3d 301;
 
 State v. Mitchell,
 
 99-3342 (La.10/17/00), 772 So.2d 78, 86 (Lemmon, J, concurring).
 

 In the instant case, the evidence shows that defendant was present at the car dealership immediately before the vehicle was taken, arousing the suspicions of Lloyd Nelson. Shortly after defendant left, another employee of the dealership reported the truck missing and stated “that Mexican dude” |4had taken it. Approximately an hour after Nelson reported the vehicle missing it was located, with a stolen license plate attached, on 1-20 in Greenwood, Louisiana, near the Texas state line; defendant was driving the truck and there was no one else in the vehicle.
 

 The essential elements of unauthorized use of a motor vehicle, La. R.S. 14:68.4, are: (1) the intentional taking or use (2) of a motor vehicle (3) which belongs to another (4) without the other’s consent or by fraud. Defendant’s self-serving statement to the arresting officer that he borrowed it from a friend was supported by no other evidence. A rational trier of fact could have found the evidence of guilt beyond a reasonable doubt to be overwhelming.
 

 
 *835
 

 Habitual Offender
 

 Defendant argues that the hearing on the habitual offender bill of information was untimely and the bill of information should have been quashed as a result.
 

 Louisiana Code of Criminal Procedure article 874 provides that sentence shall be imposed without unreasonable delay. Although La. R.S. 15:529.1 does not prescribe a time within which a habitual offender bill must be filed, the supreme court has determined that the district attorney must file the habitual offender bill within a reasonable time.
 
 State v. Muhammad,
 
 03-2991 (La.05/25/04), 875 So.2d 45;
 
 State v. Toney,
 
 02-0992 (La.04/09/03), 842 So.2d 1083. In
 
 State v. McQueen,
 
 308 So.2d 752, 755 (La.1975), the supreme court found that a multiple offender bill must be filed within a reasonable time after the necessary information is available to |fithe appropriate district attorney. The court in
 
 McQueen
 
 noted that an important factor to consider in determining whether a bill is filed timely requires an analysis of when the district attorney acquired the knowledge that defendant is a multiple offender.
 
 Id.
 
 Furthermore, the determination of whether the habitual offender hearing is held within a reasonable time hinges on the facts and circumstances of the specific case.
 
 State v. Toney,
 
 842 So.2d at 1086.
 

 In
 
 State v. Toney, supra,
 
 the Louisiana Supreme Court held that a 17-month delay between the filing of a habitual offender bill of information and the hearing on the bill was not an unreasonable delay because nothing in the record suggested that the continuances were unjustified, and the defendant was not caught by surprise because the habitual offender bill of information was filed on the day of his sentencing.
 

 In 2004, the Louisiana Supreme Court went so far as to say that a multiple offender adjudication could be timely even if the defendant had finished serving his sentence for the underlying felony.
 
 State v. Muhammad, supra.
 
 In determining whether habitual offender proceedings are timely, in addition to consideration of the facts and circumstances of the instant case, the relevant speedy trial factors set forth in
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), may also be a consideration: length of the delay, reasons for the delay, defendant’s request for a speedy trial, and prejudice to the accused.
 
 State v. Muhammad, supra.
 

 In the instant case, defendant was initially sentenced on September 22, 2006, to 10 years at hard labor following the jury’s verdict. A habitual | (¡offender bill of information was filed by the district attorney that same day. The hearing on the habitual offender bill of information was continued several times: on November 7, 2006, December 7, 2006, February 23, 2007, April 18, 2007, June 13, 2007, and July 30, 2007. In the interim, defendant filed several motions, including one for discovery and to appoint new counsel. On May 30, 2008, the defense filed a motion to quash the habitual offender bill. The hearing was held on June 3, 2008, and the motion to quash was denied. The court found defendant to be a second felony habitual offender and sentenced him to 20 years imprisonment at hard labor.
 

 Defendant was serving his 10-year sentence the entire time and had not finished serving it at the time the hearing was held. The factors to be considered in determining whether this hearing occurred within a reasonable time are: (1) the length of the delay — in this case, 20 months; (2) the reasons for the delay — in the instant case, defendant had used approximately 29 aliases in the past and had multiple birth dates and social security numbers associat
 
 *836
 
 ed with his name(s), creating difficulty in sorting through prior convictions and criminal records to determine what his status as an offender actually was; (3) request for speedy trial — defendant made no requests for a hearing on the habitual offender bill of information and was in fact filing motions and seeking discovery during the delay; and, (4) prejudice to the accused — defendant was not prejudiced. The bill was timely filed, and, under these circumstances, the delay for the adjudication hearing was not unreasonable.
 

 |
 
 tExcessive Sentence
 

 During the original sentencing, the trial court reiterated the facts of the case in detail. The court found several names, birth dates and social security numbers associated with defendant in the criminal record check.
 

 At the second felony habitual offender proceeding, the trial court did not repeat the same information given above; however, the court did state that it had received rap sheets from Florida, Texas, Nevada and Louisiana in which defendant had multiple aliases, birth dates, birth states, and physical descriptions.
 

 This sentence does not shock a sense of justice nor is it grossly out of proportion to the crime.
 

 Pro Se Claim of Ineffective Assistance of Counsel
 

 As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App. 2d Cir.09/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.04/04/08), 978 So.2d 325.
 

 In the instant case, defendant has raised multiple claims for ineffective assistance which would be better considered on an application for post-conviction relief where an evidentiary hearing can be held to determine the merits of each claim.
 

 |
 
 JPro Se Claim that the Bill of Information Charged Wrong Essential Element of Offense
 

 The amended bill of information filed September 18, 2006, states that on or about May 16, 2006, defendant “did intentionally take and use a movable, to wit: 2006 CHEVY SILVERADO, which belongs to RED RIVER CHEVROLET, without the consent of the owner thereof.” La. C. Cr. P. art. 463 establishes the basic form for a bill of information.
 
 [1]
 

 The amended bill of information in this case conforms to the form requirements set forth in La. C. Cr. P. art. 463.
 

 Pro Se Claim of Erroneous Instructions and Responsive Verdicts on Lesser included Offenses
 

 Defendant argues that the court erred in not advising the jury that defendant could have been convicted of theft and attempted theft as a lesser-included offense of unauthorized use of a motor vehicle.
 

 
 *837
 
 Theft, defined in La. R.S. 14:67, contains the essential element of “intent to deprive,” which is expressly
 
 not
 
 contained in the language for unauthorized use of a motor vehicle under La. R.S. 14:68.4. Theft is
 
 not
 
 a lesser-included offense of unauthorized use of a motor vehicle.
 

 |flPro
 
 Se Claim of Erroneous and Improper Jury Instructions, Prosecutorial Misconduct and Violation of Confrontation Clause
 

 Defendant asserts that the trial court’s permitting the witness, Lloyd Nelson, to testify to the statement made by Theron Colston after the vehicle was stolen was “prosecutorial misconduct,” as well as a denial of the right to confront a witness.
 

 Louisiana Code of Evidence Article 802 establishes that hearsay is not admissible except as otherwise provided by the Code. Hearsay is “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801(C).
 

 The statement admitted into evidence in this case was made by Theron Colston, an employee of Red River Chevrolet to Lloyd Nelson. Colston did not testify. Lloyd, however, testified that Colston said, “That Mexican dude that was just in the showroom jumped in a truck and took off.” An objection was made by the defense; however, the state argued that the statement was being introduced not to prove the truth of what was said, but to explain why Nelson called the police and initiated the use of OnStar. If an out-of-court statement is not offered to prove the truth of the words spoken, it is not hearsay and is admissible, subject to rules regarding relevancy. Further, this was a spontaneous declaration related to a startling event and would qualify as an excited utterance exception to the hearsay prohibition. La. C.E. art. 803(2).
 

 U(]Pro Se Claim of a Plea Agreement and the Trial Court’s Abuse of its Discretion
 
 in
 
 Rejecting Defendant’s Guilty Plea and Forcing Him to go to Trial
 

 Defendant argues that the trial court wrongfully refused to accept his plea of guilty and forced him to go to trial.
 

 There is no evidence of a plea agreement in the record save a mention by the trial court during sentencing of the court’s refusal to accept a plea agreement earlier in the proceedings. There is no mention of a plea agreement in the trial court minutes. There is no indication that a contemporaneous objection was made to the trial court’s refusal to accept the plea agreement, nor is there any indication that any agreement between the state and defendant was reached. Even if such had occurred, the fact that the trial court refused to accept the alleged agreement prevents either party from claiming the other side has breached the agreement.
 

 In his
 
 pro se
 
 brief, defendant claims that the trial court rejected an agreement to an 18-month sentencing cap. It is clear that the trial court has the plenary power to accept or reject a limitation on its sentencing authority.
 
 See State v. Crosby,
 
 338 So.2d 584 (La.1976), and its progeny.
 

 Conclusion
 

 For the reasons set forth above, defendant’s conviction and sentence are affirmed.
 

 [1]
 

 . “In the (Here state the name of the court.) On the_day of_, 19 — . State of Louisiana v. A.B. (Here state the name or description of the accused.).
 

 X.Y. District Attorney for the Parish of_, charges that A.B. (Here state the name or description of the accused.) committed the offense of_, in that (Here set forth the offense and transaction according to the rules stated in this Title. The particulars of the offense may be added with a view to avoiding the necessity for a bill of particulars.) contrary to the law of the State of Louisiana and against the peace and dignity of the same.’’ La C. Cr. P. art. 463.